The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employment relationship existed between the parties at all relevant times.
2. Travelers Insurance Company was the carrier on the risk.
3. The plaintiff's average weekly wage was $361.60, which yields a compensation rate of $241.06.
4. The issues for determination are:
 a. Did the plaintiff sustain a compensable occupational disease caused by exposure to tungsten carbide/cobalt while employed by defendant, and if so, to what benefits is he entitled? and,
 b. Was plaintiff last injuriously exposed to a hazardous substance while in the employ of the chicken house?
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. In October of 1984 the plaintiff began working for defendant, where he was a brazier. Plaintiff's duties involved taking saw blades, brazing carbide onto the blade, grinding the blade with a water-cooled wheel that used a diamond edge to grind the carbide down to the size of the saw. The plaintiff brazed 150 to 200 saw blades each day.
2. The grinding job produces a black mist-type residue.
3. The plaintiff has worked since 1977 at a number of chicken houses where his duties involved walking the length of a 600-foot chicken house to gather eggs. In general, each chicken house contained 8,000 hens and 1,000 roosters.
4. Prior to beginning work with defendant-employer, the plaintiff had no respiratory or other health problems.
5. The plaintiff left defendant-employer in January of 1990, and has worked for a number of employers since that time. From January of 1990 through April of 1991 the plaintiff worked as a mechanic at Jantzen where he was paid $1.50 per hour less than his wage at defendant. From April 1991 to 1993 the plaintiff worked at Hibco as a band saw operator. The plaintiff earned $8.00 per hour until October of 1991 when he earned $6.10 per hour after a lay off. At Hibco, on average, plaintiff earned $4.00 less per hour than the job with defendant.
6. The plaintiff began working in July of 1993 at Azmo, where he operated a mowing machine and earned $9.30 per hour. The plaintiff continued to work at chicken houses after leaving defendant-employer.
7. In 1990, while working for defendant, the plaintiff began experiencing problems with coughing and vomiting. He lost a great deal of weight and had severe shortness of breath.
8. On April 2, 1990 the plaintiff went to Dr. Edward Haponik, a specialist in pulmonary and critical care medicine. Plaintiff's lung capacity was at fifty to sixty percent of normal capacity. Plaintiff has a restricted ventilatory defect. Based upon plaintiff's history of the work environment and air quality studies which documented an elevation of the tungsten levels at defendant-employer, Dr. Haponik diagnosed plaintiff as having pneumonoconiosis, or hard-metal disease. A subsequent lung biopsy did not reveal the presence of any specific heavy metal.
9. Due to the work environment at defendant-employer, plaintiff was at an increased risk for developing this disease over members of the general public. The exposure to tungsten carbine/cobalt was a major causative factor in plaintiff's condition.
10. Dr. Haponik advised plaintiff to avoid exposure to metals, airway irritants, and the chicken houses.
11. There is insufficient evidence of record to prove by its greater weight that the level of airway irritants to which plaintiff was exposed in his work in the chicken houses caused or augmented his lung disease.
12. As a result of his condition, plaintiff requires ongoing medical follow-up care.
* * * * * * * * * * *
The foregoing findings of fact engender the following additional
CONCLUSIONS OF LAW
1. The plaintiff sustained a compensable occupational disease arising out of his employment within the meaning of N.C.G.S. § 97-53. Competent medical evidence has established that plaintiff was at a greater risk of contracting this lung ailment than the general public due to his employment, and the materials used at his employment with defendant bear a causal relationship with the condition.
2. As a result of the occupational disease, the plaintiff is entitled to temporary partial disability compensation for the period from January of 1990 through July of 1993 when he began working at Azmo and earning a wage greater than that earned at defendant-employer. N.C.G.S. § 97-30.
3. The plaintiff is entitled to have defendants pay for medical care incurred or to be incurred as a result of the compensable lung condition so long as the treatment tends to effect a cure, provide relief, or lessen plaintiff's period of disability.
* * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the undersigned enters the following
AWARD
1. Defendants shall pay temporary partial disability compensation to the plaintiff from January 1990 until July of 1993 at sixty-six and two-thirds percent of the difference between his average weekly wages before contracting the occupational disease and the average weekly wages while employed at Jantzen and Hibco. This sum shall be subject to a counsel fee approved hereinafter, and as the compensation due plaintiff has accrued, it shall be payable in a lump sum.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is approved and shall be deducted from sums due plaintiff and paid directly to counsel.
3. Defendants shall pay medical expenses incurred or to be incurred by plaintiff as a result of the compensable occupational lung impairment.
4. Defendants shall pay the costs.
 S/ __________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ THOMAS J. BOLCH COMMISSIONER
S/ __________________ WILLIAM L. HAIGH CHIEF DEPUTY COMMISSIONER